Mr. Plotky. May it please the court, counsel. In this case, the district court abused its discretion and committed significant procedural error by denying the defendant full exercise of his allocution rights. This court should vacate the judgment and remand for resentencing. What are you asking for, just that he have a new allocation or what? That he have the opportunity to present all of the information he had prepared to the judge who sentences him. But what he wanted to present was not to the judge, it was a letter to his mother. Yes, the first time he mentioned it, when he gave an overview, he said, I've prepared three things. A soliloquy about change that he had memorized in therapy, comments for the court and comments for his mother, then he later described it as a letter. But it's not uncommon for criminal defendants to address comments to their family during allocution, especially when the family member is present. And it's not uncommon for those comments to influence the court sentencing decision one way or the other. So it's although he characterized it as a letter to his mother, the content of that was still relevant to sentencing. Did you represent him in sentencing? Yes, I did, Your Honor. Did you object to anything? I did not. He asked three times. He asked the court three times to read the letter to his mother? Yes, I'm sorry, I should be more specific. The defendant gave an overview, I have these three things I want to talk about. In about four pages of transcript, he got through two of them. He used the word mercy, the district judge wanted to follow up with some questions about that. The defendant wanted to read the third thing that he had forecast, and he asked to do that. The judge said no. He asked again, the court said no. He asked a third time, the court said no. It's our position under the Lee case that that preserves the issue. A defendant who asks repeatedly to say something to the court and is rebuffed repeatedly has, in the view of the Lee court, preserved the issue for appeal, and that's why we believe the standard of review is abuse of discretion. Interestingly, in the Thorpe case, this court cited Lee, not on exactly that point, on a separate point, but acknowledging the Ninth Circuit's decision in Lee. The plain language of the rule is clear. Before imposing a sentence, the court must address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence. And as I mentioned a moment ago in response to Judge Thacker's question, it's not uncommon for criminal defendants to address comments to the court about their family or even address the comments directly to the family members present in court, and that can influence the court's decision. Indeed, this very court... This allocation went on longer than most. It was not an abbreviated allocation. Well, it took him four pages of transcript to get through his first two topics, even with the... He was very thorough with the judge. I mean, he recited paragraph after paragraph of his allocution to the judge. The first part of it. And Judge Osteen was patient with him. Judge Osteen has been around a while, too. He's been through a few of these things. He has done... As a lawyer, very, very... Lots of criminal defendants were represented by young Bill Osteen. Yes, they were. Yes, they were. And so he has the experience not only as an advocate, but also extensive experience on the bench. It's simply our position that in this case, he should have let the defendant... Page 34 and 35, your client filled up the whole page of transcript. 36, almost the whole page. In the middle of the page, the judge says it's your opportunity to speak. You make a decision what you want to speak about. Yes. Page 37, the same thing. Full of allocution. 38. Really full. He did a lot of allocuting. You said it wasn't enough. That's the question here. What's enough? Are we reviewing this for abuse of discretion? We contend that it should be reviewed for abuse of discretion. That's your position? That's our position. I suspect that's the government's position, too. Is the letter in the JA? It's not. So how do we know it wasn't, that it wouldn't have been repetitive? Not to mention that perhaps not relevant because it was to his mother and not to the court. Well, as far as not being repetitive, he hadn't talked about his relationship with his mother, the impact of earlier difficulty or the more recent closer relationship. So we know it's not repetitive. As far as being irrelevant, we would contend that whatever he says is going to be relevant one way or the other. If it is a heartfelt apology to the mother for the pain that his own criminal conduct has inflicted on her, that tells the court something about his character. On the other hand, if it's the other end of the spectrum and it's simply, please remember to feed my pet hamster this way or that way, then that tells something about his character, too. It shows a complete lack of accountability or concern. Either way, that's relevant to his character, which is before the court at sentencing. And as a practical matter. The main message that this individual wanted to get across was that alcohol had ruined his life and that addiction had ruined his life, but that he'd made efforts to overcome his addiction. And he was sorry about the inflictions that he had imposed upon his victims. That was the message that he wanted to get across. And he certainly got it across. There was no question about that. As I say, the allocution, as allocutions go, this is a long allocution. This was a garrulous defendant. I don't blame him for being garrulous if that's what he wishes, but Judge Osteen was fairly patient with him. He did ask some questions about whether he had had remorse for his victims in the way that he was asking for remorse from the court. And Judge Osteen asked those questions. And that's not a bad thing to have the district court ask questions during allocation. That's not impermissible. And you don't want the district court to sit there like a bump on a log and not ever engage with what the defendant is saying because it would turn it all into just a rote proceeding. Given the length of the allocation, given the fact that the main message of addiction is the reason for prior crime and his efforts to overcome that, that message was sounded loud and clear. And I don't mean to diminish his relationship with his mother. That's important to each and every one of us. But I'm not sure what particular, I'm not sure that that has a relevance to sentencing compared to the subjects that were covered in the allocation and the questioning seem much more relevant to the whole question of the sentence and the 3553A factors than the letter to his mother. And I also don't understand what sort of relief we're supposed to give to just go back to the trial court and read the letter. I mean that, you know, with all respect to you, my friend, it's not going to make a difference. I would argue, Your Honor, that it might. Are you saying that as a result of your claim for relief is what? That we vacate the sentence? Vacate the sentence. Remand for resentencing. Not just let him allocute further. You want to vacate the sentence and start all over. And under your rule, the defendant who's given a right to allocute, he gains control of the courtroom. Could filibuster. Well, Judge Osteen had control of the courtroom and he needs to keep control of the courtroom and he knows how to do that. But he was very patient. I've mentioned four or five pages, but it went on and on and on. That's true. And, you know, I've been present in a lot of allocutions and it's hard to remember one that was this extensive. This is unique on these facts for several reasons. First, the defendant clearly gave an overview. I have three things I want to address. He was only allowed to address two of them. Second, of the total length of the interchange between the court and the defendant, half of it, perhaps a little bit more than half, was the defendant responding to the court's questions. And there's nothing wrong with that. That's a healthy way to do it. That's a healthy way to do it if the defendant has had the opportunity to say what they want to say. All that the court needs... You're saying the defendant gets control of the courtroom. He doesn't. He doesn't get to control the courtroom. He doesn't get to go on with, as this court has mentioned, irrelevancies or repetitions. He doesn't get to, as in the Atwell case where a tax fraud defendant is being sentenced, say, well, you don't have authority to tax me anyway. He doesn't get to stand there and take up the court's time denying guilt, as in Grady or Gomez Jimenez or other cases this court has decided. But that's not what happened here. He had something very specific. And as far as the potential impact, this very court has told my client in other cases that what they said to their mother impacted his sentencing decision. And, again, it's not uncommon for defendants to say something to their family and for that to move the court. Moreover, under this court's precedent, and particularly in Cole and also the Eleventh Circuit's decision in Prouty, the question is not one of factual probability. Would there be a different result? It's more of a question, really, of legal possibility. Whether the full exercise of the right to allocation could have led, and that's this court's language, could have led to a sentence less than received. The Eleventh Circuit's language in Prouty, whether it might affect, and that's been the test of whether there is. I like the term that Judge Thacker used. If we were to reverse it, it would be an invitation to filibustering. This would be all kinds of things. We would essentially handcuff the district court from ever cutting anything off, no matter how lengthy it was, no matter how repetitious it was, no matter how irrelevant it was. If we were to reverse the district court on this, the district court would not be able to exercise the kind of control over allocation that district courts regularly exercise over things such as the scope of cross-examination and witness testimony, which is subject to rules of relevance and repetition under the federal rules of evidence. And you, sir, are trying to have rules for allocation that are separate and apart from the rules we have for other parts of a trial or a criminal proceeding. It doesn't seem to me like a very happy road to travel. I understand, Your Honor. I'm out of time. I do have five minutes left, and I'll certainly be back to address that point. You've got some rebuttal time, so we understand you've reserved that. Ms. Niemeyer. Good morning, and may it please the Court. Julie Niemeyer for the United States. I think we're all in agreement that this was a lengthy allocation. The defendant spoke for almost ten pages of the transcript. I mean, it is an important right. Absolutely, Your Honor. But I think Judge Osteen was a very fine district judge. He treated it that way. He said, this is your chance to say what you want to say. That's what he said. And he didn't downplay the right. He didn't give it the back of his hand and said, oh, that's no big deal. Because it is a big deal. You know, it's very basic to the perception of fairness in the criminal justice system that someone have a chance to say his or her piece. And that matters a lot to be able to address the Court. But Judge Osteen, he took it as an important right and as a serious right. He didn't try to minimize it or dust it off or something like that. Because it is important. Absolutely, Your Honor. I think this elocution and the interactions and the colloquy with the district court could be excerpted in a textbook on how elocution should be addressed. And I think the length of the elocution and the very nature of the district court's questions and conversation with the defendant demonstrate how closely the district court was listening and how sincere the defendant was in his elocution. And the district court credited that, took it seriously, and the questions reflect that. The district court commented about the progress that the defendant had made in overcoming his addiction and in trying to get past that when he made his sentencing remarks just a few minutes later. So I think this elocution was appropriate. It was limited in a very reasonable manner as to this one letter to the defendant's mother after the defendant had already been speaking for an extended time and had addressed several important topics in mitigation. And the district court was not unaware of the importance of the issue, of the relationship between the defendant and his mother, because earlier in the hearing the district court had addressed that very topic, the importance of his relationship with his mother, and the district court commented on how much credit he gave the defendant's mother for the attempts that she made to get the defendant back on a better path. Your Honors, I'd like to just for a minute address the issue of the standard of review because this case should be reviewed on the plain error standard, and that's a very difficult standard to meet. You think the lawyer had his... Pardon me, sir? You think his defense lawyer had to say something? I do, Your Honor. He wanted to appeal that, and that's a rule, isn't it? If a defendant is represented by counsel, it's counsel's role to preserve the objection. It's not up to the defendant to object. Right, Your Honor, and I think it's interesting in looking at the... Offend the judge. Certainly, Your Honor. You're not allowed to stop me. I need to be able to speak longer. It's the lawyer's job. Yes, Your Honor. Plain error review makes more sense, but it's... Abuse of discretion comes in here somewhere, too, doesn't it? Well, when we're evaluating, Your Honor... You have to find a plain error. Exactly, when we're asking... Explain that the court erred in telling him to... Stopping him from his elocution. Yes, Your Honor. That would be an abuse of discretion. Right. Then it would have to be prejudicial. What did he get, 110 months? Yeah, 120 months, Your Honor. 120 months. Interestingly. And he could have gotten more than that. Well, he was limited by the statutory maximum in this case. But it's interesting because the judge made comments on that very subject when announcing the sentence. The judge said, and this is at... There were a lot of violent instances. That's right, Your Honor. And so... Situations that were discussed. In discussing the 3553A factors, the court highlighted the extreme seriousness of this offense and the need for protection of the public because, in this instance, an innocent member of the public suffered gunshot wounds because this particular defendant, who never should have had a firearm in the first place, had discharged a firearm. Not just possessed it, but discharged it. And so, in discussing these issues, the district court actually comments on Joint Appendix 89, I think there's an argument that if I had the authority, under the current state of the law, to impose up to a 180-month sentence, that arguably this would be a case that would require a sentence of 137 months, which was the top of the guidelines in this case, or perhaps even higher than that. But the statutory maximum establishes a limit. And so this record just clearly establishes that there is not any possibility of prejudice in this case. That the defendant was not authorized to have a firearm, discharged a firearm, injured an innocent citizen. No, if we have a plain error review, I'm not saying whether we should or shouldn't, but it's always open to the court to say there was no error at all without getting into prejudice. Absolutely, Your Honor. You can say there's no error. Absolutely. Much less no plain error. Yes, Your Honor. The record speaks for itself. We've got to get past the first prong of the plain error standard. Because that's the government's position. That's the government's position, yes, Your Honor. If the panel has any further questions, I'd be happy to address them. If not, the government requests that the decision be affirmed. If you have further questions, Stephanie. Thank you. All right, Mr. Plotkin, you've got some rebuttal time. Thank you, Your Honor. Your Honor, the government points out that the defendant and the court engaged with one another for about 10 pages. The difficulty is that most of that, close to six pages, is the defendant responding to the district court's questions. It's not the defendant getting a chance to say what he wanted to say. I understand the court's concern about approving a filibuster, but, again, that's not this case. The defendant said, I have three things I want to say. It took him four pages to cover the first two, even with a couple questions from the district court. There was no reason for the district court to think that he was just going to go on ad infinitum. He had one more thing he wanted to talk about, and based on essentially two pages per topic, no reason for the district court to think he was going to go on at length. And that's why we believe it was error in this case. Yes, sir? We don't want to have a situation where district courts are required to just let allocution go on and on and on and on. I mean, as important as the right is, it's got to be subject to certain limitations, and the district court, not the allocutor, has got to be the ultimate authority in this. If we reverse this, we would simply be turning over the courtroom to an allocution, no matter how endless, no matter how tangential. And I think it would have been a much stronger allocution case if the district judge had been abrupt and just cut it off before an individual had a fair chance to plead for mercy. But that isn't what happened here. This was an engaged district judge and a patient district judge, both patient and engaged. And the proceeding went pretty doggone well. You didn't think so bad about him that you objected? I did not object. You say that he preserved it himself. That's our position. But he wasn't representing himself. No, he wasn't. It was your job to object. I mean, I don't mean to blame on you, but that's what the bench law you're supposed to do. No, I understand exactly, Your Honor. I've represented a few people myself. If you think the judge is out of bounds, you've got to say so. That's your job. That is my job at that point. Then it comes up on harmless error review. She's pretty solid to take position as plain error review. That's a tough test anyway. But whether it ever gets there, I don't know whether that makes any difference. I'm not saying. It probably doesn't make any difference. I understand, Your Honor. Your Honor, again, we maintain that the defendant's repeated requests three times with three no's from the court was. . .  Excuse me? You say that that preserved the issue. Which is exactly what the Ninth Circuit. . . I thought that you were saying that that preserved the issue and that was the error. I'm sorry. You're saying that was the error. The judge interrupted him before he could give his three answers or whatever it was, make his three points. Well, no. The judge lost patience with him or whatever you're saying. Whatever it was the defendant said enough to preserve the error. That's not his job. That's your job. Well, there were three topics, but then as we get to the third topic, three requests and three no's from the district court. And under Lee, it's our. . . And his lawyers stood mute. His lawyers' assessment of the temperature of the courtroom, which I think is important, was to proceed on and not to raise it at that point. Yes, Your Honor. And if that means. . . He's practiced before Judge Osteen. Many times. Many times. And he's not an intimidating person to lawyers in the courtroom. He's stood in your shoes. He has. He's done that. He's been there, done that. Many times himself. He has. And it's simply an assessment of what's best for the client at that moment in time. I'm out of time speaking of time. All right. We thank you, sir. We will adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Robert B. King, Stephanie D. Thacker